Jonathan Marc Davidoff, Esq.
Admitted in Florida and New York

Glen A. Kendall, Esq.
Admitted in Connecticut and New York

Aaron R. Resnick, Esq.
Admitted in Florida, of Counsel

Derek A. Schwartz, Esq.
Admitted in Florida, of Counsel



**ORIGINAL**

September 12, 2017

**via ECF**
Honorable Debra Freeman
United States Chief Magistrate Judge

Re: *United States of America v. Craig Carton, et al* Case No.: 17 MAG 6692
Emergency Letter Motion for Preliminary Injunction and Protective Order

Dear Judge Freeman:

This Firm represents Defendant Michael Wright ("Mr. Wright") in the above referenced action. This emergency letter motion is submitted pursuant to this Court's Individual Rules. Mr. Wright respectfully submits this emergency letter motion requesting a preliminary injunction and protective order be issued by this Court, and a pre-motion conference be conducted on Mr. Wright's request to file a motion for a protective order and a permanent injunction pursuant to Federal Rule of Criminal Procedure 16(d). Mr. Wright requests that this Court enter a preliminary injunction and temporary protective order requiring: (1) the Government immediately cease and desist any and all searches of Mr. Wright's cellular phone (the "Phone") that was seized by the FBI agents (the "Agents") without a warrant at the time of his arrest; (2) a stay of any order and/or previously issued search warrants that were issued that permits the Government to access and search the Phone; (3) the Government be restrained from using, disseminating, or otherwise accessing any information that the Government has already recovered from the Phone prior to the issuance of the preliminary injunction; (4) the Government identify all parties in which it has provided any information or content from the Phone with so that those parties can be compelled to be ordered to comply with the preliminary injunction and (5) the Government be ordered to preserve the Phone in the same condition it was in at the time of seizure. Mr. Wright seeks for the temporary protective order and preliminary injunction to remain in place until the Court makes a final ruling on his motion for a permanent protective order and permanent injunction pursuant to F.R.C.P. 16(d), as well as the motion Mr. Wright intends on filing pursuant to F.R.C.P. 41(g), which will seek an order for the return of the Phone to Mr. Wright.

This Court should enter the preliminary injunction because the Phone was obtained by an illegal search and seizure that occurred after Mr. Wright was removed from his home, handcuffed (which effectuated and satisfied the arrest warrant) and then was brought back into his home without any permission or authority in violation of Mr. Wright's Constitutional rights. Furthermore, the Agents demanded that Mr. Wright's wife obtain the Phone (along with other items) from the Wright's bedroom on the floor above where they detained Mr. Wright in

**Davidoff Law Firm, P.L.L.C.**

228 East 45th Street
Suite 1700
New York, NY 10017
Tel: 212-587-5971
Fax: 212-658-9852



www.DavidoffLawFirm.com

100 North Biscayne Blvd.
Suite 1607
Miami, FL 33132
Tel: 305-673-5933
Fax: 305-718-0647

handcuffs, and once retrieved, demanded that the Phone be turned over to them. Thus, the Phone was obtained by the Government pursuant to an illegal search and seizure with no consent from Mr. Wright or anyone with authority to provide the Government with the Phone. A preliminary injunction should be entered, and Phone should be returned as the Phone contains confidential, personal, and business proprietary materials that Mr. Wright does not desire to share with anyone, let alone the Government. Furthermore, if there were (and we know the Government will spin any and everything to be) any incriminating materials on the Phone, Mr. Wright has the right to not incriminate himself.

      Mr. Wright was charged (along with co-defendant Craig Carton) in a criminal complaint (the "Complaint") with various claims of fraudulent conduct relating to acts between September 2016 and January 2017. The Complaint describes a conspiracy involving the Defendants and a third individual, "CC-1", who is believed to be Joseph Meli[1]. The Complaint details allegations based on the FBI agent Sean Sweeny's ("Sweeny") review of emails, text messages, documents, and statements from other parties. In the Complaint, Sweeny specifically states his interpretation of the evidence to put the Government's spin on the facts to place the Defendants in a negative light, especially where there is absolutely no misconduct even alleged as to Mr. Wright. The Complaint was unsealed, and on September 6, 2017 (at approximately 6:00 a.m.) Mr. Wright was arrested at his home by at least nine Agents who were armed with firearms and wore protective gear. It was during this arrest that the Phone was illegally obtained from Mr. Wright's home and wife.

      Mr. Wright has attempted to avoid bringing forth this Motion by discussing this issue with the Government, and even providing the Government with evidence in contradiction to the Government's lies. However, the Government remains steadfast in its refusal to release the Phone to Mr. Wright. Per Assistant United States Attorney Elisha Kobre ("Kobre") "The government is lawfully in possession of the phone which was provided voluntarily to an FBI agent. The phone is evidence in this case and we believe there is probable cause to obtain a warrant to search it."

      The Government has no legal standing to retain the Phone or any of the materials it has illegally obtained from the Phone. The Government is wrong in its position and to support such it has already lied on two different occasions (and must continue to present perjured statements if it persists on pursuing retention of the Phone and the materials from it). There are only three means for which the Government could have legally and permissibly obtained the Phone: (1) pursuant to a search warrant, (2) a search incident to the arrest of Mr. Wright, and (3) consent of Mr. Wright. The facts show that none of these grounds are applicable in this case.

      At approximately 6:07 a.m. on September 6, 2017, the Agents went to Mr. Wright's house and banged on the front door. When Mr. Wright answered the door, he was wearing nothing more than a pair of gym shorts and he possessed no property. *See* Exhibit "A", *see also* Declaration of Mrs. Wright. Upon the opening of the door, the Agents (while armed with firearms) ordered Mr. Wright out of his home through the front door. *See* Exhibit "B", *see also* Declaration of Mrs. Wright. While detaining Mr. Wright outside of his home he asserted to the

---

[1] Meli was arrested in January 2017 and subsequently indicted on various charges related to a Ponzi scheme relating to fraudulent ticket investments.

Agents that he wanted his attorney and he instructed his wife to call his attorney. The Agents handcuffed Mr. Wright and then brought him back into his home, and entered the home themselves as well. *See* Exhibit "C", *see also* Declaration of Mrs. Wright. Mrs. Wright was immediately behind Mr. Wright when he was taken into custody by the Agents. *See* Exhibit "B". The Agents illegally entered Mr. Wright's home without any legal or justifiable purpose, without a search warrant, any need to conduct a security search, or consent from anyone. *See* Exhibit "C", *see also* Declaration of Mrs. Wright. In the home at the time of Mr. Wright's arrest were his wife, their three children (on the second floor), and the nanny (in the basement). *See* Declaration of Mrs. Wright. The home is a three-story structure, consisting of a basement, a first floor of common family space, and a second floor that houses the bedrooms. *Id.*

Then, Sweeny ordered Mrs. Wright to go upstairs with a female FBI agent to obtain Mr. Wright's passport, and cellular phones (and Mrs. Wright also obtained a shirt and a pair of shoes for Mr. Wright to wear). *See* Exhibit "D", *see also* Declaration of Mrs. Wright. At no point during the events at the home was Mr. Wright ever in possession of the Phone, and he was only temporarily un-cuffed for a few seconds to have his shirt placed on him. *Id.* Further, Mr. Wright was never asked if he consented to the Phone being provided to the Government, and in fact he was never read his Miranda Rights prior to being handcuffed or at any time in the home[2]. *See* Declarations of Mrs. Wright and Davidoff. Upon her return downstairs, Sweeny ordered Mrs. Wright to hand the Phone[3] and Mr. Wright's passport to the Agents. *See* Exhibit "E"; *see also* Declaration of Mrs. Wright. At approximately 6:13 a.m., Mrs. Wright called Mr. Wright's counsel and woke him up telling him about the arrest and that Mr. Wright told him to call him immediately. *See* Declaration of Davidoff. At approximately 7:13 a.m., Mr. Wright's counsel called Sweeney and shortly thereafter texted Sweeney on his cellular phone directing him not to communicate with Mr. Wright. *Id.* Not until 8:49 a.m. did Sweeney attempt to contact Mr. Wright's counsel, and he did so only by providing Mr. Wright his cellular phone to call counsel, at which time Sweeney spoke with counsel. *Id.*

While being detained by the Agents in the Courthouse, Mr. Wright's counsel appeared and met with him. When Mr. Wright's counsel asked Sweeny for the Phone so Mr. Wright could make phone calls to his wife and employer, Sweeny stated "No, it is evidence." *See* Declaration of Davidoff. Then, in the Clerk's office at the time Mr. Wright was executing his pre-trial release papers, in response to Mr. Wright's counsel's inquiry for when the Phone would be returned to him, Sweeny stated that he obtained the Phone directly from Mr. Wright at the time he was arrested and that "I am not going to address the phone at this time". *Id.* Mrs. Wright, Mr. Davidoff, Jeffrey Kimmel, Esq., Kobre, and possibly others (who may or may not admit it) were witnesses to Sweeny's statement. *Id.*

First, the Agents should never have been in Mr. Wright's home, as they ordered Mr. Wright to leave his home, which he did, and they handcuffed him outside his home, only to enter

---

[2] The first time Mr. Wright was ever advised of his Miranda Rights was when he was being transported from his home by the Agents in their vehicle. At no point in time during the arrest process or during the nearly ten minutes that the Agents were at Mr. Wright's home did they ever advise Mr. Wright of his Constitutional Fifth Amendment rights to an attorney and to remain silent. *See* Declaration of Davidoff.

[3] Mrs. Wright had both of Mr. Wright's cellular phones in her possession, but the Agents handed one of the cellular phones back to her after she handed both to them upon being directed to do so.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 • Tel: (212) 587-5971 • Fax (212) 658-9852

the home with Mr. Wright in custody (after the arrest warrant was satisfied). Thus, the Agents entry in Mr. Wright's home was an illegal entry and a violation of his Constitutional rights. Furthermore, not only was the way the Agents obtained the Phone an illegal seizure, but no consent could have been provided by Mrs. Wright to give Mr. Wright's property to the Government, as only Mr. Wright had standing to provide consent. Mrs. Wright did not have the right, as she is neither the owner of the Phone nor did she have any authority from Mr. Wright to voluntarily give the Phone to the Government. *See* Declaration of Mrs. Wright.

This Court has authority to issue an appropriate protective order (and preliminary injunction) pursuant to F.R.C.P. 16(d)(1) upon a showing of "good cause". "Good cause" may be established "on a showing that disclosure will work a clearly defined and serious injury" to the party seeking the protective order. *United States v. Wecht*, 484 F.3d 194, 211 (3d. Cir. 2007). Here, the Court should enter a protective order and preliminary injunction granting the relief sought by Mr. Wright, as the disclosure of information contained on the Phone prior to resolution of Mr. Wright's impending F.R.C.P. 41(g) motion would inflict a "clearly defined and serious injury" on Mr. Wright by irreparably compromising his personal privacy rights and his Constitutionally protected Fourth Amendment right against illegal search and seizure, as well as potentially publicizing confidential and proprietary information.

To prevail on a Rule 41(g) motion, the moving party "must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." *Sash v. United States*, 2009 U.S. Dist. LEXIS 90866; *Ferreira v. United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005); *In re Madison*, 687 F. Supp.2d 103, 109 (E.D.N.Y. 2009). As discussed in greater detail in Mr. Wright's F.R.C.P. 41(g) motion, Mr. Wright is undoubtedly the lawful possessor of the Phone, the Phone is not considered any category of contraband, the Government's seizure of the Phone was illegal under the Fourth Amendment, and any of the information the Government obtained from the Phone would be the fruit of the poisonous tree and suppressed.

The Phone was seized by the Government after Mr. Wright's arrest without a search warrant, without probable cause, without consent, after Mr. Wright requested an attorney, and the seizure is not protected by any of the specifically established and well-delineated exceptions to a warrantless search and seizure, including a search incident to a lawful arrest. Upon, arrest, the officers may search "the arrestee's person and the area 'within his immediate control'". *United States v. Perea*, 986 F.2d 633, 643 (2d. Cir. 1993); *New York v. Belton*, 453 U.S. 454, 457 (1981); *Chimel v. Cal.*, 395 U.S. 752, 762-63 (1969).

The Agents had no reason to enter into Mr. Wright's home after he was handcuffed outside of the home. First, Mr. Wright is only charged with economic crimes, and there is no allegation that he is a danger or had any propensity to act in a violent manner. Second, when Mr. Wright opened the front door, the Agents did not have their guns drawn (even though they were armed with firearms on them.) Third, when the Agents entered the home and walked around the home to search it (walking into rooms that were dark) they did so without their weapons drawn. In fact, when the Agents walked into the home after placing Mr. Wright under arrest outside his

home, they did not even go upstairs or downstairs to the basement to determine who was in the home and to ensure their safety. *See* Exhibit "C".

As in *United States v. Robertson*, 2017 U.S. Dist. LEXIS 33290 (D. Conn. Mar. 8, 2017), the Agents intruded on Mr. Wright's home for the sole purposes of gathering evidence. Mr. Wright had an expectation of privacy and that continued when he was arrested outside of his home by the Agents. Individuals are protected by the United States Constitution, which the Agents know very well includes the Fourth Amendment that prohibits searches that intrude on a person's expectation of privacy. *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). "[W]hen it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 133 S. Ct. 1409, 1414, 185 L. Ed. 2d 495 (2013), *see also United States v. Allen*, 813 F.3d 76 (2d Cir. Vt. Jan. 29, 2016). "The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A "search" for purposes of the Fourth Amendment occurs either when the police intrude upon a person's reasonable expectation of privacy or, alternatively, if the police otherwise trespass upon a suspect's person, house, papers, or effects for the purpose of acquiring information. *See Florida v. Jardines*, 569 U.S. 1, 133 S. Ct. 1409, 1414, 185 L. Ed. 2d 495 (2013); *United States v. Jones*, 565 U.S. 400, 132 S. Ct. 945, 951 n.5, 181 L. Ed. 2d 911 (2012)." Courts in the Second Circuit and confirmed by the Supreme Court have determined that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court*, 407 U.S. 297, 313, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972). Furthermore, "[t]he core premise underlying the Fourth Amendment is that warrantless searches of a home are presumptively unreasonable." *Harris v. O'Hare*, 770 F.3d 224, 231 (2d Cir. 2014).

Just like in *Robertson*, Mr. Wright was arrested pursuant to an arrest warrant outside of his home. The only justification the Agents would have had to enter Mr. Wright's home was: (1) pursuant to a search warrant (which they did not have), (2) consent (which was not provided), and/or (3) pursuant to a lawful protective sweep (which was never conducted). The Agents never obtained a search warrant to search Mr. Wright's home, so this cannot be argued. The Agents never asked, and were never granted consent to enter or search Mr. Wright's home. Finally, it is clear based on the conduct of the Agents that they did not conduct a protective sweep, rather they entered the home to gather evidence, which is prohibited. See *Mincey v. Arizona*, 437 U.S. 385, 391-92, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978). However, if the Agents were even going to try to argue that they conducted a "security sweep" of Mr. Wright's home, they would only be further perjuring themselves as they would have to establish pursuant to the Second Circuit that there were "articulable facts that would warrant the reasonable belief that someone within the home is aware of the arrest outside the premises and might destroy evidence, escape or jeopardize the safety of the officers or the public." *United States v. Guerrero*, 813 F.3d 462, 467 (2d Cir.), cert. denied, 137 S. Ct. 98, 196 L. Ed. 2d 82 (2016). This cannot be established by the Agents, since Mrs. Wright was standing with one of the Agents at the front

door, and there were only three children in the home (all under the age of six). Furthermore, the Agents were not permitted in Mr. Wright's home for any longer period of time "than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Maryland v. Buie*, 494 U.S. 325, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990); *see also, United States v. Oguns*, 921 F.2d 442 (2d. Cir 1990).

When Mr. Wright answered the door, he was immediately removed from his home and placed in handcuffs outside his home where he asserted his desire to have an attorney and directed his wife to call his counsel. Clearly, as depicted in the photographs provided by the surveillance cameras in Mr. Wright's home, Mr. Wright was not in possession of the Phone when he answered the door and was handcuffed. Furthermore, at the time he was placed in handcuffs, Mr. Wright immediately demanded his attorney, which clearly precludes any questioning. Since Mr. Wright was taken into custody when he first came into contact with the Agents, any questioning of Mr. Wright was improper as he did not have his attorney present with him. "Under *Edwards'* prophylactic protection of the Miranda right, once such a defendant has invoked his right to have counsel present, interrogation must stop." *United States v. Plugh*, 576 F.3d at 140; *Montejo v. Louisiana*, 129 S. Ct. 2079, 2098-90 (2009). Likewise, if the suspect initially decides **after** receiving the warnings that he wishes to remain silent, the custodial officers must "scrupulously honor[]" his "right to cut off questioning." *United States v. Plugh*, 576 F.3d at 140; *Michigan v. Mosley*, 423 U.S. 96, 104 (1975). "[W]hen counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." *Minnick v. Mississippi*, 498 U.S. 146, 153, (1990).

The Phone was only obtained by the Government through the Agents' misconduct. First, the Agents entered Mr. Wright's home *after* the arrest warrant was executed and satisfied *outside* of his home. Then, the Agents directed Mrs. Wright to go upstairs and retrieve Mr. Wright's cellular phones and passport (as well as certain articles of clothing.) In fact, one of the Agents accompanied Mrs. Wright upstairs and into her room to ensure that she recovered the Phone. Then, upon returning downstairs, the Agents ordered Mrs. Wright to hand over the Phone to her. Clearly, Mrs. Wright is not the owner of Mr. Wright's cellular phone, and thus had no authority to consent to the surrender of the Phone to the Government. Furthermore, the Agents were not permitted to seek consent from Mr. Wright as he had already invoked his right to remain silent and to have counsel with him upon any questioning. Moreover, the Agents were not allowed to simulate circumstances warranting application of the incident-to-arrest exception merely by bringing the item they wish to search into the new area near the person arrested, or visa-versa. *United States v. Perea*, 986 F.2d at 643; *United States v. Hill*, 730 F.2d 1163, 1167 (8th Cir 1984); *United States v. Wright*, 577 F.2d 378, 381 (6th Cir. 1978); *United States v. Rothman*, 492 F.2d 1260, 1266 (9th Cir. 1973). Furthermore, consent must be voluntary and not based on misrepresentations made by government agents. *Bolger v. United States,* 189 F. Supp. 237, 253 (S.D.N.Y. 1960); *see also Gouled v. United States*, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647. Consent may not be the product of duress or coercion, flagrant or subtle. *United States v. Sanchez*, 635 F.2d 47,58 (2nd Cir. 1980). "(T)he Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied **threat** or covert force. For, no matter how subtly the coercion was applied, the resulting "consent" would be no more than a pretext for the unjustified police intrusion against which

the Fourth Amendment is directed. *Id.* In examining all the surrounding circumstances to determine if in fact the **consent to search** was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents. *Id.*; *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). To establish voluntariness, the government must show the exercise of free will by defendant, not simply an acquiescence to authority. *United States v. Moldofsky*, 2000 U.S. Dist. LEXIS 17884 (2000). When consent is provided by an individual in custody, the claim by the government of consent should be scrutinized with care. *United States v. Williams*, 219 F. Supp.2d 346, 354 (W.D.N.Y. 2002); *see also United States v. Watson*, 423 U.S. 411, 424 (1976). Finally, if a third party provides consent, the government has the burden to show by a preponderance of the evidence that the consent was (1) freely and voluntarily given and (2) was obtained from someone who possessed **common authority** over or other sufficient relationship to the premises or effects sought to be inspected. *United States v. Williams*, 219 F.Supp. 2d at 356; *see also United States v. Williams*, 219 F.Supp. 2d at 356; *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), *United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 993, 39 L. Ed. 2d 242 (1974).

Additionally, the Government has demonstrated that it has other valid and readily accessible means of obtaining the information it wishes to seek from the Phone from other sources. First, a more accurate method for obtaining records contained on a cellular device is to subpoena the records directly from the device carrier as, information can be deleted from the device itself but maintained in the carrier's records. Second, based on statements contained in the Complaint, it appears that the Government has already obtained the information that it proposes would be contained on the Phone. In the Complaint, Sweeney states, "Based on my review of email and text messages obtained pursuant to search warrants..." Clearly, the Government is trying to seek other information, including personal materials as well as attorney client privileged communications from the Phone. Based on such, it is evident that the Government has already obtained the text messages and emails which it speculates are contained on the Phone.

Regardless of what is on the Phone, Mr. Wright is not required to provide the Government with evidence and information that incriminates him or assist the Government in prosecuting him. The Government knows this, and is abusing its power, just as the Agents did by entering Mr. Wright's home after arresting Mr. Wright outside his home. Furthermore, Sweeny is lying as to how he obtained the Phone, which now raises substantial credibility issues into the entire investigation and all of the allegations against Wright and Carton in the Complaint. Finally, regardless of how much evidence is on the Phone, no amount of evidence should be permitted when it violates a defendant's Constitutional rights.

In summation, the Agents had no right to enter Mr. Wright's home because they effectuated his arrest and satisfied the arrest warrant outside of his home and had no legal basis to enter the home. Thus, the Phone is the fruit of the poisonous tree. Then, because Mr. Wright requested an attorney and told the Agents he would not speak without his attorney (and he was never read his Miranda Rights), he could not have provided any consent to the Agents to take the Phone. Furthermore, Mrs. Wright had not authority to provide the Phone to the Agents. In conclusion, there is no basis for the Phone to remain in the Government's possession, which will

be established in Mr. Wright's F.R.C.P. 41(g) motion that he intends on filing within the next few days (which will seek an order for the return of the Phone to Mr. Wright).  There is no harm to the Government by the entry of this protective order and temporary injunction, but there will be immense harm to Mr. Wright if such relief is not provided.

As such, Mr. Wright respectfully requests that this Court enter a preliminary injunction and a protective order pursuant to Federal Rule of Criminal Procedure 16(d) ordering:  (1) the Government immediately cease and desist any and all searches of Mr. Wright's cellular phone (the "Phone") that was seized by the FBI agents (the "Agents") without a warrant at the time of his arrest; (2) a stay of any order and/or previously issued search warrant that was issued that permits the Government to access and search the Phone; (3) the Government be restrained from using, disseminating, or otherwise accessing any information that the Government has already recovered from the Phone prior to the issuance of the preliminary injunction; (4) the Government identify all parties in which it has provided any information or content from the Phone with so that those parties can be compelled to be ordered to comply with the preliminary injunction and (5) the Government be ordered to preserve the Phone in the same condition it was in at the time of seizure.  Furthermore, it is respectfully requested that this Court enter an order permitting Mr. Wright to immediately obtain a backup of the contents of the Phone within five days of such order.

There is a video lasting less than ten minutes of the events surrounding Mr. Wright's arrest and the taking of the Phone, which this Court should review if it is contemplating denying Mr. Wright's request.  Furthermore, it is believed that an evidentiary hearing will be necessary for this Court to determine Mr. Wright's motion for the return of the Phone.  Mr. Wright respectfully requests the opportunity to address any of the Government's assertions in its response papers to this letter motion.

Mr. Wright thanks the Court in advance for its time and attention to this emergency motion.

Respectfully submitted,
/JMD/
Jonathan Marc Davidoff, Esq.
Counsel for Defendant Michael Wright


cc:  All counsel of record via hand delivery, email and ECF